IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACIE DAWN MOORE**, | Civil No. 6:15-cv-2418-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, United States Attorney's Office, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Tracie Dawn Moore ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's

decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff protectively filed an application for DIB on December 8, 2011, alleging

disability beginning June 1, 2008. AR 17. She was 36 as of the alleged disability onset date.

Plaintiff alleged disability due to fibromyalgia, neuropathy in her legs and feet, nerve damage,

and anxiety. AR 21. The Commissioner denied the application initially and upon reconsideration;

Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). AR 17. An

administrative hearing was held on August 2, 2013. AR 35. The ALJ subsequently ruled that

Plaintiff was not disabled under the Social Security Act. AR 17. The Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

AR 9. Plaintiff now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also* *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. AR 19. The ALJ then applied the sequential process. AR 19-29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. AR 19. At step two, the ALJ found that Plaintiff suffered from two severe impairments, peripheral neuropathy and affective disorder. AR 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the regulations. AR 19.

The ALJ next determined the Plaintiff's RFC. AR 20-21. The ALJ found that Plaintiff retained the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she was limited to only occasional interaction with the public and with coworkers. AR 20-21. At this step, the ALJ considered Plaintiff's symptom testimony and the submitted written lay

PAGE 5 – OPINION AND ORDER

testimony. AR 21-27. The ALJ did not fully credit all of the limitations and symptoms testified to by Plaintiff. AR 21-25. The ALJ also considered all of the medical evidence, including the opinion of Dr. June Worthington, Plaintiff's treating physician. AR 21-26.

At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 27. At step five the ALJ found that there were other jobs in the national economy that Plaintiff could perform. AR 27-28. The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act. AR 28.

## DISCUSSION

Plaintiff seeks review of the ALJ's determination Plaintiff has not been under a disability as defined in the Social Security Act. Plaintiff argues the ALJ erred in making his determination by: (1) improperly evaluating the opinion of Dr. Worthington; and (2) not fully crediting the limitations testified-to by Plaintiff.

## A.  Failure to Credit the Opinion of Dr. Worthington.

Plaintiff first argues that the ALJ improperly evaluated the medical testimony of her treating physician, Dr. Worthington. Specifically, Plaintiff argues that Dr. Worthington's medical opinions deserved controlling weight and also that the ALJ did not give specific and legitimate reasons for rejecting Dr. Worthington's opinions.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### 1. Physical Impairments

Plaintiff offered the written opinion of Dr. Worthington as to the limiting effects of Plaintiff's physical impairments. AR 513-16. The opinion was based on Dr. Worthington treating the Plaintiff, as her general physician, for eight months. AR 513. Plaintiff argues that the ALJ improperly evaluated Dr. Worthington's medical opinion regarding Plaintiff's physical limitations. Specifically, Plaintiff argues that Dr. Worthington's opinion deserved controlling weight. Plaintiff also argues that even if Dr. Worthington's opinion deserved less than controlling weight, the ALJ failed to provide legally sufficient reasons for partially rejecting the opinion.

A treating physician's opinion is given controlling weight as long as it is found to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not

inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).

When a treating source's medical opinion is not given controlling weight, the ALJ must consider

several factors in deciding what weight to give various medical opinions in the record.

*Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. § 404.1527(c)(2).

      The ALJ gave no specific explanation for giving Dr. Worthington's medical opinion less

than controlling weight. It can be inferred that the ALJ found the opinion to be inconsistent with

other substantial evidence in the record. *See* AR 25 ("The undersigned has reviewed and

considered the opinions from various treating, examining, non-examining, and reviewing

medical sources and has given weight to each opinion based on the consistency of each opinion

with the objective medical evidence of record."). The ALJ did not, however, discuss the factors

set forth in the regulations for determining how much deference to give Dr. Worthington's

opinion after determining it was not entitled to controlling weight. *See Holohan*, 246 F.3 at 1202

("If the treating physician's medical opinion is inconsistent with other substantial evidence in the

record, '[t]reating source medical opinions are still entitled to deference and must be weighted

using all the factors provided in 20 CFR [§] 404.1527.' SSR 96–2p; *see id.* ('Adjudicators must

remember that a finding that a treating source medical opinion is . . . inconsistent with the other

substantial evidence in the case record means only that the opinion is not entitled to 'controlling

weight,' not that the opinion should be rejected . . . . In many cases, a treating source's medical

opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

test for controlling weight.'" (alterations in original))).

      Dr. Worthington opined that Plaintiff was limited to two hours of standing and walking

and two hours of sitting in an eight hour work day. AR 513. Dr. Worthington further stated that

Plaintiff would need the freedom to shift positions at will between sitting and standing or

walking throughout the work day and that she could lift and carry less than ten pounds frequently. AR 513-14. Finally, Dr. Worthington opined that Plaintiff would be absent from work more than three times per month. AR 513.

These opinions by Dr. Worthington were contradicted by the medical opinions of State agency consultants, Dr. Mary Ann Westfall and Dr. Sharon Eder. AR 78-79, 94-95. Accordingly, the ALJ had to provide "specific and legitimate reasons" to reject Dr. Worthington's medical opinion. *Ryan*, 528 F.3d at 1198.

The only reason the ALJ gave for discounting the opinion of Dr. Worthington regarding Plaintiff's physical condition is because Dr. Worthington's opinion that Plaintiff could sit for no more than two hours was contradicted by Dr. Worthington's treatment notes describing Plaintiff as having a "sedentary activity level." AR 26. Generally, a discrepancy between a treating physician's medical opinion and his or her own treatment notes would be a specific and legitimate reason to reject that medical opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (explaining that a discrepancy between a doctor's statements and his treatment notes from the same day was a clear and convincing reason to reject that doctor's opinion). In this case, however, substantial evidence in the record does not support that Dr. Worthington's listing Plaintiff as having a "sedentary activity level" was contradictory to Dr. Worthington's medical opinion about Plaintiff's physical limitations.

"Sedentary Activity Level" appears to be one of a set choice of options for the category "Lifestyle," located under the heading "Social History" in Plaintiff's medical records. *See* AR 441, 497, 501, 636. Other categories under "Social History" include: "Marital Status," "Employment," "Tobacco," "Alcohol," and "Home Environment/Safety." *Id.* Without knowing what the category "Lifestyle" was regarding, or what the other options were, a conclusion cannot

be drawn that recording a "sedentary activity level" was contradictory to Dr. Worthington opining that Plaintiff could not sit for more than two hours in an eight hour workday. Instead of indicating that Plaintiff sits for more than two hours, it more likely that "Lifestyle" is describing a patient's level of exercise, and a "sedentary activity level" means no exercise. Such a note would not then contradict an opinion that a patient has a two-hour sitting limitation. A person can have a sedentary lifestyle through laying down. Without more, the ALJ failed to give a specific and legitimate reason for rejecting Dr. Worthington's medical opinion on Plaintiff's sitting limitation.

Finally, the ALJ did not directly address Dr. Worthington's opinion that Plaintiff's physical impairments would cause her to be absent from work more than three times a month. *See* AR 25-26. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286. Thus, the ALJ also failed to give a specific and legitimate reason for rejecting Dr. Worthington's opinion regarding how many days of work Plaintiff would miss a month because of her physical impairments.

The Court agrees with Plaintiff that the ALJ improperly evaluated Dr. Worthington's medical opinion regarding Plaintiff's physical limitations. Upon remand the ALJ must reconsider Dr. Worthington's opinion and determine whether it should be given controlling weight. If the ALJ does not give Dr. Worthington's opinion controlling weight, then the ALJ must consider the factors described in 20 C.F.R. § 404.1527. If the ALJ rejects Dr. Worthington's medical opinion regarding Plaintiff's physical limitations, the ALJ must provide specific and legitimate reasons.

## 2. Mental Impairments

Plaintiff also offered Dr. Worthington's written opinion as to the limiting effects of Plaintiff's mental impairments. AR 514-16. Dr. Worthington's opinion was contradicted by the opinions of State Agency consulting psychiatrists, Dr. Megan Nicoloff and Dr. Sandra Lunblad.

AR 79-80, 95-96. Dr. Worthington was not Plaintiff's treating mental health professional and so the issues relating to a treating physicians are not relevant. Even if Dr. Worthington were considered Plaintiff's treating physician for purposes of mental health, as discussed above, it can be inferred the ALJ did not give Dr. Worthington's opinions controlling weight because he found they were inconsistent with other substantial evidence in the record. *See* AR 25.

The ALJ gave Dr. Worthington's mental impairment opinion little weight because it was too restrictive, it was not based on objective medical evidence or testing, and Dr. Worthington is not a mental health professional. AR 26. The Court finds that these are specific legitimate reasons, supported by substantial evidence in the record.

Dr. Worthington's opinion on Plaintiff's mental limitations was inconsistent with substantial evidence in the record. The record shows that Plaintiff has struggled with anxiety and psychiatric symptoms for several years. *See e.g.*, AR 613 (2006 treatment notes indicating that Plaintiff had history of post-partum depression and had admitted herself into a mental institution ten years prior); 408 (Dr. Susan Terran stating Plaintiff had "a long history of severe anxiety"); 506 (Dr. Worthington observing Plaintiff has had significant problems with generalized anxiety in the past). Dr. Worthington's opinion regarding the severity of Plaintiff's mental limitations, however, is inconsistent with the medical record and Dr. Worthington's treatment notes.

For example, Dr. Worthington opined that Plaintiff was "moderately" limited in her ability to remember things. AR 515. Only one physician in the record ever noted such a symptom, and the note was based on Plaintiff's subjective statements. AR 358 (Dr. Grant noting Plaintiff reported problems with memory). Most of Plaintiff's physicians noted an absence of memory problems. *See* AR 401 (Dr. Roberta Bell reporting Plaintiff's memory as "intact"); 409

(Dr. Terran finding Plaintiff was negative for memory impairment); 482 (Dr. Kho finding

Plaintiff had intact short and long term memory). Dr. Worthington's own treatment record also

noted that Plaintiff had no problems with memory. *See* AR 445 (Dr. Worthington reporting

Plaintiff is not having memory loss); 507 (Dr. Worthington stating Plaintiff was negative for

memory impairment); 629 (Dr. Worthington finding Plaintiff negative for memory impairment at

same appointment when medical opinion was written).

Another example of inconsistency with the record is Dr. Worthington's opinion that

Plaintiff was "extremely" limited in her ability to interact appropriately with the general public.

AR 515. Although the medical record and Dr. Worthington's treatment notes demonstrate that

Plaintiff is somewhat limited in her ability to interact appropriately, the record does not support

that Plaintiff is "extremely" limited. *See* AR 408 (Dr. Terran noting Plaintiff reported difficulty

going to the clinic or grocery store because of anxiety); 445 (Dr. Worthington stating that

Plaintiff was mildly anxious initially but became more comfortable as the appointment went on);

629 (Dr. Worthington notes Plaintiff had "appropriate interaction"). The ALJ's decision not to

give controlling weight to Dr. Worthington's medical opinion concerning Plaintiff's mental

limitations was rational because of these and other inconsistencies.

Plaintiff also argues that the ALJ erred by giving Dr. Worthington's opinion less weight

because she was not a mental health specialist. Giving more weight to the opinion of a specialist

about medical issues related to his or her area of specialty, however, is permissible under the

regulations. *Smolen*, 80 F.3d at 1285; 20 C.F.R. § 404.1527(c)(5). When deciding how much

weight to give the medical opinions concerning Plaintiff's mental limitations, the ALJ properly

considered that Dr. Worthington was not a mental health specialist and the reviewing State

Agency psychiatrists were. The ALJ gave specific and legitimate reasons for giving

Dr. Worthington's medical opinion of Plaintiff's mental limitations little weight.

### 3. Conclusion

The ALJ erred in evaluating Dr. Worthington's medical opinion regarding Plaintiff's

physical limitations. The ALJ's evaluation of Dr. Worthington's medical opinion regarding

Plaintiff's mental limitations is upheld.

## B.  Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected Plaintiff's symptom testimony.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting

effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First,

the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Smolen v.*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's assessment of a claimant's subjective testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ did not fully credit Plaintiff's statements regarding the extent and severity of her impairments. AR 27. The ALJ gave several reasons for not fully crediting Plaintiff's claimed limitations: (1) Plaintiff made inconsistent statements; (2) Plaintiff had a history of noncompliance with medical advice; (3) Plaintiff improved with treatment; (4) the testimony was inconsistent with the scope of the Plaintiff's reported activities of daily living; and (5) the claimed limitations were not supported by objective medical evidence. AR 21-25.

### 1.  Inconsistent Statements

The ALJ noted that Plaintiff had made inconsistent statements regarding her symptoms to her medical marijuana physician and to her neurologist. AR 24. On July 26, 2012, Plaintiff reported to Dr. Andrew Dorfman, who issued her medical marijuana card, that her symptoms were refractory to opioids and Gabapentin. AR 564. This conflicted with Plaintiff's March 28, 2012, statement to Dr. Kho that Gabapentin and Tramadol were both effective. AR 493. This inconsistency was a clear and convincing reason for the ALJ discount Plaintiff's subjective symptom testimony.

### 2.  Noncompliance with Medical Advice

The ALJ next found Plaintiff's credibility was further undermined by her unwillingness to seek counseling for her anxiety. AR 24-25. Failure to seek treatment or follow a prescribed course of treatment, which is unexplained or inadequately explained, is a clear and convincing reason to discredit pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

PAGE 15 – OPINION AND ORDER

Noncompliance with medical advice may "cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603. If a claimant's noncompliance in getting treatment is because of a lack of funds, however, disability benefits may not be denied. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff argues her noncompliance with medical advice was well explained. Plaintiff also argues she could not afford counseling. Plaintiff testified at the hearing, however, that she declined counseling because she did not feel comfortable talking to a stranger. AR 53. During her testimony, Plaintiff did not say she declined counseling because she could not afford it. *See id.* Over the years, Plaintiff gave various and sometimes contradictory excuses to her physicians who recommended she seek counseling for her anxiety. *See e.g.*, 410 (Plaintiff telling Dr. Terran she had gone through "several courses of counseling" in the past, but she wanted to wait until after her surgery to seek more counseling); 630 (Dr. Worthington noting Plaintiff said she was having counseling elsewhere); 642 (Dr. Worthington recommended Plaintiff seek counseling, which Plaintiff declined due to economic circumstances).

The record supports the ALJ's finding that Plaintiff's noncompliance with medical advice was not adequately explained. Plaintiff's noncompliance was another clear and convincing reason for the ALJ to discount Plaintiff's claimed limitations.

### 3. Improvement with Treatment

The ALJ also noted that Plaintiff reported her symptoms improved with treatment. She reported that her anxiety was significantly improved with medication, including Wellbutrin, Celexa, Elavil, and Buspar. AR 23-24. She also reported that medical marijuana improved her symptoms. AR 24. Impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

### 4. Activities of Daily Living

The ALJ found that the scope of Plaintiff's reported activities of daily living further undermined the credibility of her symptom testimony. AR 25. Although "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," a level of activity that is inconsistent with claimed limitations has a bearing on a claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (1998).

When questioned about her lifestyle, Plaintiff testified she could do her laundry, make meals, do limited driving, and roll a 25-pound bag of dog food into a shopping cart. AR 51, 58, 62. In addition, Plaintiff reported doing limited vacuuming, taking her 15-year-old daughter to all appointments and engagements, watering the flowers, and talking to her family members on the phone in her personal function report. AR 250-53. In a third party function report, Plaintiff's husband stated she also took care of all household errands, walked, fed and bathed the dog, went shopping twice a week, and talked to her mother on the phone once a week. AR 241-48. This level of activity was not inconsistent with Plaintiff's claimed limitations and the ALJ erred in so finding.

### 5. Objective Medical Evidence

Finally, the ALJ found Plaintiff's credibility was undermined because her symptom testimony was not supported by the objective medical evidence. AR 21, 23. The Court agrees that the objective medical evidence did not support Plaintiff's statements regarding fatigue from walking, her anxiety symptoms, and her fibromyalgia diagnosis. There is not, however, substantial evidence in the record supporting the ALJ's findings that Plaintiff's statements regarding sitting and the use of her hands were unsupported by the objective medical evidence.

Plaintiff testified that she would have a "very hard time" walking across the hearing room and would become fatigued. AR 45-46. This claim was not supported by the medical record. *See*

AR 386 (Dr. Jeffrey Myers finding Plaintiff negative for fatigue in 2010); 359 (Dr. Grant finding

a "generally normal" gait and "no gross weakness in either lower extremity" in 2011); 483

(Dr. Yung Kho finding a normal gait, ability to stand without difficulty, and normal motor

function in 2012); 638 (Dr. Worthington recording a normal motor, balance and gait, and no

change in fatigue in 2013); *but see* AR 495 (Dr. Kho finding ataxic gait present and Plaintiff

unsteady when standing in 2012); 507 (Dr. Worthington finding Plaintiff positive for fatigue

in 2012).

Plaintiff also testified that she had daily panic attacks which would prohibit her from

leaving the house. AR 54-55, 61. In her Function Report, Plaintiff stated she got so anxious

going to see her doctors that she would become physically ill. AR 249. Although the objective

medical evidence suggests that Plaintiff suffered from anxiety, the evidence does not support

Plaintiff's claims regarding the severity of her anxiety. *See* AR 445 (Dr. Worthington recording

that Plaintiff was "mildly anxious"); 637 (Dr. Worthington noting that Plaintiff was "actually

doing slightly better overall"); *but see* 408 (Dr. Terran commenting Plaintiff had "a long history

of severe anxiety"). In addition, multiple doctors noted that medication was effective in treating

Plaintiff's anxiety. *See e.g.,* AR 381 (Dr. Myers stating "[r]elieving factors include medication"

and "Patient continues to be very happy with [medication] combination, feels much better on

this"); 446 (Dr. Worthington reporting in 2012 that Plaintiff's anxiety under "fair control" and

"[B]uspirone working well for her"). Plaintiff herself testified that her anxiety medication helped

her condition. AR 54. The objective medical evidence suggests well-managed anxiety.

Plaintiff also claims she suffers from fibromyalgia. AR 232. The ALJ found there was no

definitive diagnosis of fibromyalgia in the medical record. AR 24. Fibromyalgia is noted in

Plaintiff's medical record multiple times. *See e.g.*, AR 383 (Dr. Myers stating pain in multiple

joints "very likely fibromyalgia in nature"); 437 (Dr. Bell noting "16 tender points positive for fibromyalgia" during follow up regarding Dr. Grant's findings); 480 (Dr. Kho reporting "symptoms of fibromyalgia"). It is unclear whether Dr. Grant diagnosed Plaintiff with fibromyalgia or made a different diagnosis. *Compare* AR 360 (Dr. Grant diagnosing Plaintiff with "chronic myofascial bilateral neck, shoulder, periscapular, and upper extremity pain syndrome") *with* 437 (implying Dr. Grant had found 16 tender points positive for fibromyalgia).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch*, 400 F.3d at 679. Based on the record available, it was a rational interpretation for the ALJ to conclude the objective medical evidence did not support Plaintiff's testimony regarding the severity of her fatigue from walking, her anxiety, and also her claim that she had fibromyalgia. Although Plaintiff's symptom testimony cannot be rejected "solely because" it is unsupported by objective medical evidence, such findings support the other clear and convincing reasons the ALJ gave, discussed above. *See Robbins*, 466 F.3d at 883.

Two of the ALJ's findings, however, were not a rational interpretation of the record. Plaintiff testified that she had trouble using her hands when opening and holding objects. AR 52. The objective medical evidence supports the existence of symptoms that would affect Plaintiff's use of her hands. *See e.g.*, AR 360 (Dr. Grant's diagnosis of generalized peripheral neuropathy affecting motor and sensory nerves and having axonal and demyelinating features); 483-84. (Dr. Kho finding Plaintiff had allodynia in her hands and feet). The ALJ reached the opposite conclusion, citing medical findings on Plaintiff's grip strength and muscle bulk. AR 24. The ALJ ignored the effects a nerve disease would likely have on Plaintiff's use of her hands.

Plaintiff also testified that she had pain while sitting, located in her hips, legs, and shoulders. AR 52. The ALJ concluded that these statements were inconsistent with the record,

citing Dr. Grant's conclusions regarding sensory examination, weakness, range of motion, and muscle strength. AR 24. These conclusions by Dr. Grant are not dispositive on the issue of pain. Other parts of the record, including Dr. Grant's diagnosis, appear to support Plaintiff's symptom testimony. *See* AR 359-60 (Dr. Grant noting "some diffuse tenderness in the back and hip areas bilaterally" during physical examination and diagnosing Plaintiff with "chronic myofascial bilateral neck, shoulder, perscapular, and upper extremity pain syndrome with referred symptoms into upper extremities"); 483-84 (Dr. Kho finding during physical examination that Plaintiff's neck and spine were tender to the touch and Plaintiff was "sensitive in her hips").

The ALJ did not rationally interpret the record when he found Plaintiff's symptom testimony about the use of her hands and pain while sitting was unsupported by the objective medical evidence. These findings were therefore made in error.

### 6. Conclusion

The ALJ erred in considering Plaintiff's activities of daily living and finding that Plaintiff's testimony regarding the use of her hands and pain while sitting were not supported by objective medical evidence to discount Plaintiff's testimony. The ALJ, however, gave several other clear and convincing reasons for discounting Plaintiff's symptom testimony. An ALJ's credibility decision may be sustained even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

## C. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,
> the district court must next consider whether the ALJ would be
> required to find the claimant disabled on remand if the improperly
> discredited evidence were credited as true. Said otherwise, the
> district court must consider the testimony or opinion that the ALJ
> improperly rejected, in the context of the otherwise undisputed
> record, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true. If so, the district court may exercise its
> discretion to remand the case for an award of benefits. A district
> court is generally not required to exercise such discretion,
> however. District courts retain flexibility in determining the

> appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the ALJ failed to evaluate properly Dr. Worthington's medical opinion regarding Plaintiff's physical limitations. The Court finds there are remaining conflicts and ambiguities that need to be resolved. Specifically, the appropriate weight to give Dr. Worthington's medical opinion regarding Plaintiff's physical limitations needs to be considered. Thus, remanding for further proceedings consistent with this opinion is more appropriate than an award of immediate benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge